IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 27, 2004

## ROBERT E. ALLEN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 76025   Richard Baumgartner, Judge**

**No. E2003-01070-CCA-R3-PC**
**February 25, 2004**

The Petitioner, Robert E. Allen, pled guilty to aggravated assault, three counts of domestic assault, vandalism, evading arrest, public intoxication and reckless burning.  The trial court sentenced him to five years in prison for the aggravated assault and eleven months and twenty-nine days on each of the other charges, with the sentences to run concurrently.  The Petitioner did not perfect an appeal of his sentence, but petitioned for post-conviction relief on the grounds that he was denied effective assistance of counsel.  Following a hearing on the post-conviction petition, the post-conviction court dismissed the petition.  On appeal, the Petitioner contends that he was denied effective assistance of counsel for the following reasons:  (1) trial counsel failed to properly advise him as to the potential sentences for all the charges covered in the plea agreement; and (2) trial counsel failed to advise him of his right to appeal the sentence imposed by the trial court.  Finding no error, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Robert E. Allen.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Richard H. Dunavant, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The transcript of the guilty plea, which is included in the record presently before us, reveals that the Petitioner pled guilty to several offenses.  In that transcript, the assistant district attorney stated:

[The Defendant will] be pleading guilty in the first count to aggravated assault, punishable by three to six years as a range I standard offender. In this case it'll be five years. He'll make application for probation. He is–under the information that the state will oppose his release.

In the second count he's pleading guilty to domestic assault, and that would be 11 [months], 29 [days], concurrent with the first count; again, applying for probation.

Third count is domestic assault; again 11 [months], 29 [days], concurrent with the second and first counts.

The fourth count is misdemeanor vandalism. Recommended sentence is 11 [months], 29 [days], concurrent with the other counts.

The fifth count is a count of fleeing, evading arrest. Recommended sentence, 11 [months], 29 [days], concurrent with all the other counts.

The sixth charge, he's charged with public intoxication. Recommended sentence is 30 days, concurrent with the other counts.

The seventh count, he's charged with domestic assault. Recommended sentence is 11 [months], 29 [days], concurrent with all the other counts.

The eighth count, he is charged with reckless burning, also class A misdemeanor; 11 [months], 29 [days] is the recommended sentence, concurrent with the other counts.

Before entering the Defendant's guilty plea, the following exchange took place between the trial court and the Defendant:

THE COURT: The agreement, as I understand it, is you're going to be pleading guilty to the most serious offense in the first count, that being aggravated assault. That's a class C felony. Total range of punishment is three to 15 years. Three to six as a range I offender. The agreed sentence is five years, one less than the maximum, as a range I offender.

And you're going to be making application for probation. It is a probatable offense, but it's up to me to make that determination, and the state's going to oppose that, okay? So I have to look at all of the things that I'm supposed to take into account and make a determination. I've got three options. I could deny probation, order you to serve the sentence. I could order you to serve some time in custody–Of

course, you're in custody now, so you're already serving some time–and then place you on probation. But I could hold you up to a year and then put you on probation, or I could put you on probation, finding that you're entitled to do that, at the sentencing hearing. So you understand those are the three options.

THE DEFENDANT: Yes, sir.

THE COURT: But you understand it's my call?

THE DEFENDANT: Yes, sir.

After this exchange, the State informed the trial court that, were the case to go to trial, the evidence would show that:

> [O]n August 2nd at . . . 5:46 p.m. the defendant entered the residence at 5608 Dodge Road. He began assaulting the victim. He picked up a wooden table and struck her about the head and upper body, causing bruising and a cut over her right eye. He threatened to kill her. He had called twice since this incident, threatening to kill her. They do have a child in common, Tyler Shown. And he had assaulted her earlier that day around 12:40 p.m. after she had already signed warrants, but they had not been served on him yet.

At the sentencing hearing, the trial court noted that the pre-sentence report showed that the Defendant had six prior Driving Under the Influence ("DUI") convictions, multiple public intoxication convictions, multiple driving on a revoked license convictions and three prior misdemeanor assaults. The trial court then denied the Defendant's request for probation based upon "[the Defendant's] record, the seriousness of the offense, the multiple types of conduct that you've engaged in" and remanded the Defendant to the Tennessee Department of Correction to serve the five-year sentence.

The following evidence was presented at the post-conviction hearing. The Petitioner testified that he pled guilty to aggravated assault and a series of misdemeanors. He stated that his attorney, William Brown ("Counsel"), represented him at a preliminary hearing in general sessions court and at his guilty plea hearing. The Petitioner stated that, at the preliminary hearing, he learned that he was charged with aggravated assault, arson, two counts of misdemeanor domestic violence, evading arrest and public intoxication and discussed the plea offer with Counsel.

The Petitioner testified that Counsel did not advise him correctly regarding his arson charge. He stated that Counsel told him that the State was offering five years for the aggravated assault and advised the Petitioner to agree to that sentence. The Petitioner testified that Counsel told him that, if the Petitioner went to trial, the State would seek ten to fifteen years for the arson charge plus five years for the aggravated assault for a total of fifteen to twenty years. The Petitioner stated that he agreed to plead guilty because he was "scared of the arson charge, getting [fifteen] to [twenty] years"

-3-

and that he would not have pled guilty if he was aware that he only faced one to two years on the arson charge. The Petitioner testified that, after he was incarcerated, he discovered through his own research that the potential sentence for arson was much less than Counsel had told him.

The Petitioner also testified that Counsel improperly advised him regarding the sentence that he was facing on the charges against him and his right to appeal. He stated that Counsel told him that he would get probation because he "was a perfect candidate for it" and that he was eligible for, and would get, parole. The Petitioner stated that he pled guilty in reliance on Counsel's statement that he would get probation. The Petitioner further testified that Counsel never discussed his right to appeal the sentence imposed upon him by the trial court. The Petitioner stated that, had he known of his right to appeal, he would have appealed the trial court's decision regarding alternative sentencing.

On cross-examination, the Petitioner admitted that, in exchange for his agreement to plead guilty, two pending charges against him, one for DUI and one for driving on a revoked license, were dismissed. The Petitioner also conceded that the arson charge was reduced to reckless burning in the plea agreement. The Petitioner stated that the most severe charge that he was facing was the aggravated assault charge and that he received one year less than the maximum sentence for that charge. The Petitioner stated again that Counsel told him that he was a perfect candidate for probation despite the fact that he was convicted of the following offenses: simple assault on December 6, 1999; DUI on December 3, 1997; DUI on May 7, 1997; assault on November 21, 1995; public intoxication on July 26, 1995; driving on a revoked license on October 11, 1996; DUI on February 14, 1995; a bad check violation on May 3, 1995; driving on revoked license on January 5, 1995; DUI on January 15, 1995; obstructing police on May 28, 1991; public intoxication on April 7, 1989; public intoxication on August 22, 1986; assault on August 25, 1986; public intoxication on April 16, 1984; felony receiving stolen property on October 1, 1982; a weapons offense on September 12, 1983; and a weapons offense on May 10, 1984. The Petitioner also conceded that the prosecutor stated twice that she intended to oppose probation and recalled that, at the sentencing hearing, the judge said he was not an appropriate candidate for probation.

The Petitioner acknowledged that he signed a waiver of trial by jury and an acceptance of his pleas of guilty. He stated that, in the guilty plea forms, Counsel agreed to make an application for probation for him, but did not guarantee that he would receive probation. The Petitioner stated that, when it became apparent he was not going to receive probation, Counsel incorrectly advised him that his actual service time would be one year. The Petitioner admitted that he was sent to prison on November 30, 2001, and had his first parole eligibility hearing in July of 2002. Upon being asked by the court, the Petitioner stated that Counsel told him prior to the sentencing hearing that he would be paroled in one year.

The Petitioner stated that, after the sentencing hearing, he and Counsel never discussed his right to appeal the sentence imposed upon him. The court asked the Petitioner, "If you were me, would you have denied probation to you, looking at your record?" and the Petitioner responded, "Yes, sir."

Counsel testified that he was the Petitioner's attorney in September or August of 2001 and that, with regard to this case, the State's attorney told Counsel that she would offer the Defendant five years and he could apply for probation. Counsel stated that he relayed this to the Petitioner, and the Petitioner decided he wanted to take the deal. Counsel testified that, in the deal, the State also agreed to dismiss a felony DUI charge against the Petitioner. Counsel stated that, at the sentencing hearing, he was aware of the Petitioner's extensive criminal history and that he never promised him that he was a perfect candidate for probation. He testified that he could think of no reasons that he would have told the Petitioner that he was facing ten to fifteen years for the arson charge since arson never carries that sentence. Counsel testified that he went over the range of punishment for each of the eight counts that the Petitioner was pleading guilty to and that he thought the Petitioner was competent at the time that he signed the plea agreement. Counsel testified that he probably told the Petitioner that the Petitioner would meet with the parole board in approximately one year, but that he never guaranteed the Petitioner that he would be paroled in one year. Counsel stated that he usually tells his clients that, "If you want me to appeal this decision, you need to let me know now because I have a limited amount of time to file a notice of appeal." He stated that the Petitioner expressed no desire to appeal. On cross-examination, Counsel agreed that the felony arson charge was reduced to a misdemeanor as a result of the plea agreement.

At the conclusion of this proof, the post-conviction court issued a memorandum opinion in which it denied the Petitioner's request for relief. In that opinion the court stated:

> [The Petitioner] raises, essentially four grounds in which he claims that [Counsel] gave him inappropriate advice and claims that this inappropriate advice rises to the level of ineffective assistance of counsel entitling him to relief under the post-conviction statutes in effect in this state.
>
> His first claim is that he was advised by [Counsel] that he should plead guilty to this aggravated assault count and take a five-year sentence, and there's no dispute that the agreement–offered agreement was a five-year sentence to serve and apply for probation, with the understanding the state would oppose probation at the outset. This offer was made in general sessions court, and it was discussed down there.
>
> Now, [the Petitioner] says that the reason he agreed to take this is because he was advised by [Counsel] that if he did not take it that the state was going to specifically proceed on the arson charge and that he was facing 10 to 15 years on the arson charge in addition to the sentence in the aggravated assault charge.
>
> [Counsel], in his testimony, states that he cannot conceive of giving him that advice because arson, in any form, does not carry a 10- to 15-year sentence. . . .
>
> Therefore, [Petitioner], I do not find that testimony credible. If he was going to advise you that you were–had exposure for arson-related offenses, other than the E felony of burning personal property, he would not have advised you that it was a

-5-

10- to 15-year sentence. So I find that that testimony not to be–I find that testimony not to be credible and find that issue without merit.

With regard to the probation and the parole issue, I'm going to deal with those jointly because I think they're related. It's inconceivable that any lawyer who is the least bit competent would ever promise any client any specific result–or as they're smart enough to know, that they can't predict what a jury is going to do or necessarily what a judge is going to do. Now, they may have an opinion on what a likely outcome is.

But anybody who looked at your record, [Petitioner], and if you review the sentencing report that I reviewed here this morning, you had a record that started at age 18 and continued on an annual basis from that time until you were 36. You had six DUI convictions, multiple assault convictions, other related convictions, and a felony back in the eighties. It's, again, inconceivable to me that anyone would say to you you are a perfect candidate for probation when you're pleading guilty to an offense for which you have been convicted on three prior occasions and you have at least 15 or 20 other convictions on your record.

. . . .

So I do not, again, find that testimony credible. I do not believe that [Counsel] told you–and he has testified here today that he did not tell you–you would be guaranteed probation. And, indeed, that's further bolstered by the fact that during the sentencing hearing the state stands up and announces that they are in opposition to you being placed on probation, and I went over in great detail, as I always do, the fact that that would be my decision to make and what my opinions were, being denial of probation or split confinement or probation, and made sure you understood that that was my decision to make, and you indicated that you did.

And the reason I asked you about the parole, when you were told about parole being granted in a year, again, a thing that I find inconceivable that any lawyer would do is guarantee you when you're going to be given parole. It makes no sense if you thought you were guaranteed probation and a perfect candidate for probation that you would have a discussion about parole, because you knew you were going to get probation, and you've testified here today that that conversation took place prior to the sentencing hearing, and if it allegedly took place prior to the sentencing hearing, there is no conceivable reason why you would have a discussion about parole if you knew you were going to get probation. So I find that incredible and without merit with regard to the issue of probation and parole.

Lastly, on your allegation that you were not advised of your right to appeal, [Counsel] candidly says that he can't remember a conversation about appeal, but

normally he would have that discussion with you once the sentencing hearing is over. However, I find it unnecessary to make a finding of whether or not there was that discussion because in my judgment there was no prejudice, even if you were told there is no appeal, because you would not have been successful on appeal, and I'm not–that's not being arrogant on my part.

But when you look at the offense that you've been convicted of, the facts that are in the record with respect to the nature of that offense, the fact that you had an extensive prior criminal history in which you had not taken advantage of that in the sense that you had been revoked for–from release into the community status for subsequent offenses, and lastly, the fact that this was a–yet another domestic assault, when you've been convicted of previous domestic assaults, I'm convinced that the Court of [Criminal] Appeals would have sustained my finding that you are not an appropriate candidate for probation. So, likewise, I find that ground to be without merit.

For all of these reasons, [Petitioner], I do not find that you have established by clear and convincing evidence that there was any ineffective assistance of counsel, and I dismiss your post-conviction petition.

The Petitioner appeals two of the findings made by the post-conviction court. First, he contends that Counsel failed to properly advise him as to the potential sentences for all the charges covered in the plea agreement, and second, he contends that Counsel failed to advise him of his right to appeal the sentence imposed by the trial court.

## II. Analysis

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

### A. Potential Sentences

The Petitioner first contends that Counsel failed to properly advise him as to the potential sentences that he was facing for all the charges against him. Specifically, the Petitioner contends that Counsel told him that he was facing ten to fifteen years for his arson charge if he took his case to trial. Mistaken advice about the potential sentence that a petitioner faces can be a proper basis to set aside a plea agreement. Lebraun Thomas v. State, No. 03C01-9306-CR-00190, 1994 WL 102062, at *3 (Tenn. Crim. App., at Knoxville, Mar. 29, 1994), *no perm. app. filed*. However, in its memorandum opinion, the post-conviction court accredited Counsel's testimony that Counsel could

not conceive of giving the Petitioner advice that he faced ten to fifteen years for the arson charge because arson, in any form, does not carry a ten to fifteen year sentence. The post-conviction court found that the Petitioner's testimony was not credible and further noted that if Counsel was going to advise the Petitioner that the Petitioner had exposure to additional prison time for the arson-related offenses, he would not have advised the Petitioner that the exposure was a ten to fifteen year sentence. Upon our de novo review, we agree with the trial court's findings and conclude that the Petitioner failed to prove by clear and convincing evidence that counsel's performance in advising him as to the potential sentences fell below an objective standard of reasonableness. Accordingly, we conclude that the Petitioner is not entitled to post-conviction relief on this issue.

### B. Right to Appeal

The Petitioner next contends that Counsel was ineffective because he failed to advise him of his right to appeal the sentence imposed by the trial court. Although the Petitioner testified that Counsel never told him that he had a right to appeal the case, Counsel testified that, while he did not specifically remember informing the Petitioner of this right, he usually tells his clients that, "If you want me to appeal this decision, you need to let me know now because I have a limited amount of time to file a notice of appeal," and that the Petitioner expressed no desire to appeal. We conclude that the Petitioner did not prove by clear and convincing evidence that Counsel was ineffective by failing to advise him of his right to appeal.

Furthermore, we agree with the trial court that, even if the Petitioner had satisfied this prong of the test, the Petitioner has failed to meet his burden of establishing that he was prejudiced by his failure to appeal. We have reviewed the sentencing transcript, and there is overwhelming support for the denial of the Petitioner's request for probation. Since 1982, the Petitioner has been convicted of two assault charges, three DUI charges, four public intoxication charges, two driving on a revoked license charges, one bad check violation, one obstructing police violation, one felony receipt of stolen property and two weapons offenses. Additionally, another DUI charge and another driving on a revoked license charge were dismissed as part of the Petitioner's plea agreement. The Petitioner has failed to meet his burden of establishing that, if he had appealed, there is a reasonable probability that the result of this case would have been different. Therefore, the Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we conclude that the Petitioner has failed to prove ineffective assistance of counsel by clear and convincing evidence, and the post-conviction court did not err by finding that the Petitioner received effective assistance of counsel and dismissing his petition. Therefore, we AFFIRM the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE